IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STEPHANIE RISTOW, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civ. No. 5:19-cv-1469 |
| V. | § | |
| | § | JURY DEMANDED |
| TEXAS LAUREL RIDGE HOSPITAL, L.P., | § | |
| UHS OF DELAWARE, INC. DBA UNIVERSAL | § | |
| HEALTH SERVICES OF DELAWARE, INC., | § | |
| AND RODNEY NORMAN, | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Stephanie Ristow ("Ristow" or "Plaintiff") files this Original Complaint against Defendants Texas Laurel Ridge Hospital, L.P. ("Laurel Ridge"), UHS of Delaware, Inc. dba Universal Health Services of Delaware, Inc. ("UHS"), and Rodney Norman ("Norman") (collectively, "Defendants"), and would show as follows:

## PRELIMINARY STATEMENT

1.      Stephanie Ristow is a former National Military Liaison for Laurel Ridge who worked for the hospital since 2006. Ristow's former supervisor, Director of Military Services Rodney Norman, subjected her to five years of sexist and racist comments. Norman told Ristow, for example, that her job required too much travel for a wife and mother because families fall apart when mothers are not close to home. He told her routinely she was not "Black enough" to work with certain military bases. Norman even told Ristow that no one at Laurel Ridge respected her because of how she moved up through the hospital, pantomiming pulling down a dress and falsely implying that she had slept her way to her position. When Ristow tried to push back on Norman's offensive suggestions, Norman told her to go to a women and business conference so she could

PLAINTIFF'S COMPLAINT                                                                                  1

learn to keep her "womanly emotions in check." When Ristow reported her significant concerns to Human Resources Director Brenda Frederick, Frederick brushed Norman off, telling her to "put your big girl pants on and stop being so emotional and deal with it."

2.      In late 2018, Ristow learned that Laurel Ridge's discriminatory treatment also impacted her compensation. Ristow, who is one of three National Military Liaisons who all perform exactly the same job duties and responsibilities, earned $62,000 per year while her male counterparts earn, respectively, more than $90,000 and more than $100,000 annually. When Ristow raised this pay discrepancy to Norman, he admitted that such a large gender-based pay gap did not "look good," and he promised her a $3,000 raise. However, he failed to follow through on even that insufficient promise. After nine months of attempting to persuade Norman to give her the promised raise, Ristow learned that Norman had also been submitting purposefully falsified work reports to his supervisors which incorrectly made it appear she was underperforming. Ristow then complained to Defendant UHS's corporate office about Norman's longstanding discriminatory treatment of her and the wide gap between her compensation and her male counterparts' earnings. Only eleven days later, Defendants terminated Ristow for false allegations by Norman that Ristow had been misreporting her travel expenses.

3.      By paying Ristow tens of thousands of dollars less than her male counterparts for years, and then terminating her shortly after she reported her concerns to Defendant UHS, Defendants have violated the Equal Pay Act.

## **PARTIES**

4.      Plaintiff Stephanie Ristow is female and brings this action individually.

5.     Defendant Texas Laurel Ridge Hospital, L.P. is a Texas limited partnership and may be served through its registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

6.     Defendant UHS of Delaware, Inc. dba Universal Health Services of Delaware, Inc. is a Delaware corporation and may be served through its registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

7.     Defendant Rodney Norman is an individual who may be served with process and his regular place of business, 17720 Corporate Woods Drive, San Antonio, Texas 78259.

## JURISDICTION AND VENUE

8.     The Equal Pay Act of 1963 states, "[n]o employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ."  29 U.S.C. § 206(d).

9.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), which provides, "An action to recover liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any federal or state court of competent jurisdiction by any one or more employees for and on behalf of himself and themselves and other employees similarly situated."

10.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in the District.

## FLSA COVERAGE AND JOINT EMPLOYMENT STATUS

11.     Laurel Ridge is mental health facility located in San Antonio, Texas offering residential, in-patient, and out-patient treatment for children, teens, and adults.

12.     At all times hereinafter mentioned, Defendant Laurel Ridge has been an employer and enterprise engaged in commerce within the meaning of the Equal Pay Act. Plaintiff was employed by Laurel Ridge from 2006 through 2019.

13.     At all times hereinafter mentioned, Defendant UHS has been an employer and enterprise engaged in commerce within the meaning of the Equal Pay Act. Moreover, Defendant UHS is a joint employer with Laurel Ridge of Plaintiff. Laurel Ridge is a subsidiary of UHS and is owned and operated by UHS. As the owner and operator, UHS is directly involved in the employment of Laurel Ridge staff. UHS maintains the ability to hire and fire Laurel Ridge employees, supervises and controls employees' work schedules and conditions of employment; determines employee rate of pay and method of pay; and maintains employment records.

14.     Defendant Norman has served as Director of Military Services for Laurel Ridge since approximately 2014. During his entire tenure as Director of Military Services, he has been Plaintiff's direct supervisor. In that role, he has the ability to hire and fire Laurel Ridge employees (including Plaintiff); supervises and controls employees' work schedules and conditions of employment (including Plaintiff's); determines employee rate of pay and method of pay (including Plaintiff's); and maintains employment records (including Plaintiff's). Defendant Norman has therefore acted as a joint employer within the meaning of the Equal Pay Act at all times since 2014.

## FACTS

15.     Stephanie Ristow comes from a proud military family. As a child, she lived with her family at Fort Hood, where her father was stationed as a colonel in the U.S. Army. She grew up knowing and appreciating U.S. military culture and the sacrifices made by active duty soldiers, reservists, and their families. Ristow's first husband was also a member of the U.S. Army and was originally stationed at Fort Bragg. After September 11, her husband was deployed to Afghanistan and her husband, Ristow, and their children were profoundly impacted by his service.

16.     Ristow has first-hand knowledge and appreciation for the mental health struggles of military members and their families. She understands the importance of seeking behavioral health treatment and how to access care on base. She has devoted her career to helping service members access the mental health care they need.

17.     In 2006, Ristow was offered a position as a Mental Health Technician with Laurel Ridge. In 2009, based on her stellar performance and her passion for working with military members and their families, Laurel Ridge assigned her to work with its Mission Resiliency Program, which treats service members struggling with issues related to both combat trauma and non-combat trauma using cognitive behavioral therapy, prolonged exposure and cognitive processing therapy. Because of her familiarity with military family life and with Fort Hood in particular, Fort Hood personnel specially requested Ristow as its liaison. After Ristow excelled in this position, she was promoted to Military Liaison for military accounts throughout Texas.

18.     Ristow was promoted to National Military Liaison in 2014 and assigned to accounts throughout the United States. As National Military Liaison, Ristow worked in the Business Development Department at Laurel Ridge. The purpose of the position is to develop and educate direct Military referral relationships to Laurel Ridge. The position requires National Military

Liaisons to travel to military bases around the country approximately 75 percent of her working time.

19.     Although Ristow was passionate about her work with the military on behalf of Laurel Ridge, since her early days of employment she dealt with sexual harassment and an unresponsive human resources team. In approximately 2009, a male employee rubbed his erect penis on Ristow's rear end while she was working and without her consent. Ristow reported the sexual harassment to her then-supervisor, who informed Human Resources. HR Director Brenda Frederick ("Frederick") called Ristow into her office to discuss Ristow's complaint. Frederick told Ristow that Ristow was a "single girl known around campus for flirting," and that Ristow should not "go looking" for unwanted behaviors. Ristow left the meeting in tears. The same man worked at Laurel Ridge for several more years and continued to harass Ristow, but Frederick did nothing to intervene.

20.     In approximately 2014, Defendant Norman joined Laurel Ridge as Director of Military Affairs. Norman is an African American man.

21.     Also in approximately 2014, Laurel Ridge hired two additional National Military Liaisons, Maurice Jeanice ("Jeanice") and Robert "Rico" Lingley ("Lingley"). Jeanice and Lingley are both men. Although each of the three National Military Liaisons were responsible for different military installations and bases across the country, all three performed the same job duties.

22.     Shortly after Norman became Ristow's supervisor, he began saying sexist, racist, and demeaning comments to her. For example, he called Ristow (who is Caucasian) a "rich white girl born with a silver spoon in [her] mouth" and said she was not "Black enough" to work on certain military bases. He warned her that "families fall apart" when wives and mothers, like Ristow, did not stay "close to home," knowing that her position required 75 percent travel. He also

regularly told her that other employees did not respect her because of her job trajectory within the company.

23.     Because Ristow had such a negative experience reporting sexual harassment to Human Resources in the past, and to Frederick in particular, Ristow was concerned about reporting her concerns about Norman to HR. However, in approximately 2016, she overcame her trepidation and submitted a summary of Norman's racist, sexist, and derogatory language to Frederick. Following her complaint, however, Norman's offensive behavior continued. Norman also removed Ristow from an important account in retaliation for submitting a complaint against him.

24.     In October 2017, Ristow submitted a formal HR complaint to Frederick regarding Norman's continued offensive behavior. Frederick organized a meeting with Ristow, Jeanisse, and Norman. During this meeting, Norman admitted telling Ristow she was not Black enough to work at certain bases, that she was a rich white girl born with a silver spoon in her mouth, and that women should be close to home and family instead of traveling. Frederick attempted to stop Norman from admitting making these comments, and she frequently interrupted Norman to explain what Norman "really" meant by those statements. Frederick also told Ristow that Jeanisse (who was also having trouble with Norman) and Ristow misunderstood the purpose behind Norman's offensive comments. Frederick stated that Norman is an "educator" by nature and that his comments were intended to "educate" his staff.

25.     Following this meeting, Norman's offensive behavior did not end. Sometime in 2017, for example, Norman told Ristow that she should not talk to certain other female employees who did not like Norman because "all you women stick together." He also continued to tell her that it was natural that employees did not respect Ristow because of "how [she] moved up in the hospital." When Ristow asked what he meant by that, he did not give her a clear answer.

PLAINTIFF'S COMPLAINT                                                                7

26.     However, on approximately February 1, 2018 Norman gave Ristow important context for his continued derogatory comments about her career trajectory. Norman and Ristow were alone in his office, and he was standing. He told her that Laurel Ridge needed fewer "short skirts" at Fort Hood. He continued that Fort Hood needed more of "this," gesturing to his brain, and less of "this," pantomiming pulling down a dress. Based on this comment, Ristow believed that Norman was falsely implying that she performed her position by sleeping around.

27.     On information and belief, other employees have submitted complaints to Human Resources about Norman's racist and sexist behavior.

28.     In late 2018, Ristow was speaking with her colleagues Jeanice and Lingley and was horrified to learn that she was paid tens of thousands of dollars less than they were each year. Specifically, Ristow's annual salary was approximately $62,000, while Jeanice earned over $90,000 and Lingley earned in excess of $100,000 per year. This large salary discrepancy exists even though there is no difference in their job duties and even though Ristow has worked at Laurel Ridge since 2006, while Jeanice and Lingley only began with the hospital in 2014. On information and belief, this large salary discrepancy has existed since at least 2014.

29.     When Ristow raised this enormous pay discrepancy to Norman and told him that it was unfair that she was paid so much less than the male employees, he admitted that it "didn't look good" for him to have such a large difference between the women and the men's pay in his department. He also admitted that Ristow, Jeanice, and Lingley all performed the exact same job duties. He did not provide any explanation for the large pay disparity. However, in December 2018 he agreed to raise Ristow's annual compensation to $65,000. Although this raise would do little to erase the gap between Ristow's pay and the male employees' compensation, she agreed to accept the raise.

PLAINTIFF'S COMPLAINT                                                                              8

30.     After promising Ristow a small raise in December 2018, however, Norman failed to follow through. Despite Ristow's frequent attempts to check on the status of her raise, Norman never instructed Human Resources to raise her salary and Ristow continued to earn approximately $62,000 until she was terminated.

31.     Shortly after Ristow complained to Norman about the unequal pay between herself and the male employees in the department, in January 2019, Norman screamed and swore at Ristow and hung up on her. Ristow discussed the conversation with Human Resources, and Frederick told her that she was "bugging" Norman and frustrating him, causing him to yell and curse at Ristow. Frederick then told Ristow that if she got so upset over the conversation, maybe it was not the right job for Ristow. Frederick instructed Ristow to "put your big girl pants on and stop being so emotional and deal with it." Frederick also said, "This isn't the first time you have had issues." When Ristow asked what Frederick meant, Frederick brought up her prior sexual harassment complaint about a former employee rubbing his erect penis on her rear end, again implying that the sexist behavior of other employees was somehow Ristow's fault.

32.     In February 2019, in retaliation for Ristow's complaints about Norman's behavior and the unequal pay based on sex, Norman took five of Ristow's producing accounts and distributed them to himself and another employee. When Ristow asked why, Norman responded, "Do you trust your husband fully?" Confused by this seeming non sequitur, Ristow responded, "I don't know. Why?" Norman responded, "Whelp, that tells a lot." He did not provide Ristow with any other explanation for removing the accounts from her control.

33.     Also in February 2019, Norman gave Ristow a brochure on a women's conference and told her, "I think this would be good for you, to learn about your emotions and women in the workplace." He also mentioned that it would help Ristow keep her "womanly emotions in check."

PLAINTIFF'S COMPLAINT                                                                                    9

34.     Norman's mistreatment of Ristow continued throughout 2019. Over the summer of 2019, Norman stopped speaking to Ristow almost completely. At one point, he stopped responding to her phone calls and they went more than one month without speaking, despite Norman continuing to speak to the male employees in his department.

35.     In August 2019, Ristow met with new Business Development Director Terry Buford. Buford expressed concerns about his observation of how Norman was treating Ristow. Buford warned Ristow to document everything to protect herself because Norman was doing something "fishy." Buford then shared documents with Ristow demonstrating that Norman was altering the records Ristow submitted to Norman monthly. These documents showed that Norman was altering Ristow's performance numbers to make it look like she was conducting inadequate referrals and business meetings. Norman then shared the altered records with his supervisors and the UHS corporate office to make it appear that Ristow was underperforming.

36.     On August 2, 2019, Norman instructed Ristow to submit an expense report that omitted certain flight changes following a work trip to Hawaii. Norman told Ristow that if she did not remove the information regarding flight changes, finance would "kick it back" and that she should keep the reports simple to cause less confusion in finance. Ristow followed Norman's explicit instructions.

37.     Following Ristow's submission of her Hawaii expense report, finance began kicking back her reports without providing her with reimbursement. Over two months of expense reports were outstanding and not reimbursed. To date, Laurel Ridge owes Ristow money in unpaid travel expenses. Ristow also told Norman that, without expense reimbursement, she could no longer afford to front the expenses to travel to do her job. Instead of assisting her in getting paid,

however, Norman threatened to make her perform clerical work in the office if she could not afford to pay for travel out of her own pocket.

38.     When Ristow complained about the failure to reimburse, she noted that Lingley was submitting reports in the same manner, but was still getting reimbursed. Ristow then reviewed Lingley's expense reports to see why their reports were being treated differently by finance and Norman. Ristow noticed inconsistencies on Lingley's flight records that appeared to demonstrate he was receiving double reimbursements.

39.     Ristow attempted on at least two occasions in September 2019 to follow up with Norman about her promised raise. Norman refused to address the issue.

40.     On September 17, 2019, Ristow reached out to Laurel Ridge Chief Operations Officer Camillea McKinney for advice regarding the reimbursement issue and Norman's sexist and racist treatment of her, including the issue of unequal pay between Ristow and the male department members. McKinney recommended bypassing Laurel Ridge and filing a corporate complaint with UHS directly, since Laurel Ridge had failed to assist Ristow for so many years.

41.     Ristow followed McKinney's advice two days later. On September 19, 2019, she filed a corporate complaint with UHS on its website. Her complaint included a detailed summary of Norman's past behavior over many years and Frederick's complete failure to assist her or stop Norman's harassing and discriminatory behavior based on sex and race. Ristow also complained that her salary was so much lower than the male employees under Norman's supervision. She wrote, "I am paid way under my male colleagues. I have approached Rodney [Norman] with this many [] times." She also discussed the raise Norman promised her and yet failed to process for over nine months, noting that even if the raise had been applied her salary would be "still be under my colleagues."

PLAINTIFF'S COMPLAINT                                                           11

42.     On September 23, 2019, Laurel Ridge terminated Ristow's computer access.

43.     That same day, Laurel Ridge CEO Jacob Cuellar called Ristow into a meeting. Cuellar went over Ristow's corporate complaint concerns with her and asked what the hospital could have done to help her. Ristow responded, "Anything. You could have done anything to help but nothing was done." Ristow also submitted documentation to Cuellar demonstrating that Lingley was the one submitting false expense reports and double dipping, not Ristow. Cuellar shook her hand, thanked her for speaking with him, and promised to investigate her concerns thoroughly. Ristow asked him whether she was going to be fired. Cuellar responded, "No, we are going to suspend you while I can look into everything."

44.     Cuellar then left the room and Human Resources Assistant Patti Schroeder and the finance director entered and presented her with a suspension form. The form accused Ristow of submitting fraudulent expense reports.

45.     On September 30, 2019, Laurel Ridge terminated Ristow effective September 27 for alleged "falsification of travel expenses."

46.     Ristow did not and never has submitted fraudulent expense reports. Instead, she followed the precise instructions of Norman in submitting the expense reports Laurel Ridge now claims to be fraudulent. On information and belief, Norman purposely set Ristow up to be terminated by instructing her to submit the expense reports in a certain way and then reporting her for fraud based on the exact same conduct her instructed her to perform. Moreover, despite Lingley's continued double billing for flights uncovered by Ristow and submitted to CEO Cuellar for investigation, Lingley remains employed by Laurel Ridge.

47.     Following Ristow's retaliatory termination, Ristow was a finalist for a position with a mental health treatment facility in a similar role until Laurel Ridge interfered in that hiring

process by contacting the company and telling them that Ristow could not be hired by any UHS facilities because of "theft."

48.     On information and belief, Laurel Ridge has been hiring to replace Ristow, and Norman has been vocally opposed to hiring a woman for the position.

## FIRST CAUSE OF ACTION
### 29 U.S.C. §206(d)(1) ("Equal Pay Act")

49.     Plaintiff incorporates by reference all of the allegations made in the preceding paragraphs.

50.     Despite being similarly situated to Maurice Jeanice and Rico Lingley and performing the same job with equal skill, effort and responsibility, under similar working conditions, as they did, Plaintiff Stephanie Ristow (who is female) is and has been compensated less than Maurice Jeanice and Rico Lingley, who are male.

51.     As a result of Defendants' unlawful acts, Plaintiff has been deprived of equal wages in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to The Equal Pay Act.

52.     Defendants' unlawful conduct has been willful and intentional.  Defendants were aware or should have been aware that the practices described herein are unlawful. Defendants have not made a good faith effort to comply with The Equal Pay Act with respect to the compensation of Plaintiff.

53.     Because Defendants' violations of the Equal Pay Act have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

## SECOND CAUSE OF ACTION
### 29 U.S.C. § 215(a)(3) ("Equal Pay Act Retaliation")

54.     Plaintiff incorporates by reference all of the allegations made in the preceding paragraphs.

55.     Under 29 U.S.C. §215(a)(3), it is an unlawful employment practice for an employer to discriminate against any of its employees because that employee engaged in protected conduct.

56.     Defendants retaliated and/or discriminated against Plaintiff for complaining regarding her unequal and discriminatory compensation.

57.     After Plaintiff complained regarding unequal and discriminatory compensation, she suffered material adverse employment actions, including but not limited to her termination for pretexual reasons. Said material adverse employment actions would not have occurred "but for" Plaintiff's complaints regarding her unequal and discriminatory compensation.

### ATTORNEYS FEES AND COSTS

58.     Plaintiff is entitled to an award of attorney fees and costs under 29 U.S.C. §216(b).

### DAMAGES

59.     As a direct and proximate result of Defendant's actions, Plaintiff suffered injuries and damages and seeks the following:

a.   back pay;

b.   equitable relief, including, but not limited to front pay;

c.   actual and liquidated damages for unpaid wages under the Equal Pay Act;

d.   mental anguish and emotional distress damages for Equal Pay Act retaliation;

e.   reasonable attorney's fees under the Equal Pay Act;

f.   pre-judgment and post-judgment interest as provided by law;

g.   all costs of court; and

PLAINTIFF'S COMPLAINT

14

h.  any other relief to which Plaintiff may be entitled, whether in law or equity.

## JURY DEMAND

60.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a

trial by jury on all issues.

## PRAYER

61.     For these reasons, Plaintiff asks for judgment against Defendant for the following:

a.  back pay;

b.  equitable relief, including, but not limited to front pay;

c.  actual and liquidated damages for unpaid wages under the Equal Pay Act;

d.  mental anguish and emotional distress damages for Equal Pay Act retaliation;

e.  reasonable attorney's fees under the Equal Pay Act;

f.  pre-judgment and post-judgment interest as provided by law;

g.  all costs of court; and

h.  any other relief to which Plaintiff may be entitled, whether in law or equity.


Respectfully submitted,

**THE MORALES FIRM, P.C.**
6243 Interstate 10 West, Suite 132
San Antonio, Texas 78201
Telephone: (210) 225-0811
Facsimile: (210) 225-0821

BY: /S/Melissa Morales Fletcher
Melissa Morales Fletcher, *Of Counsel*
ATTORNEY-IN-CHARGE
State Bar No. 24007702
Email: Melissa@themoralesfirm.com
Allison Sarah Hartry
State Bar No. 24083149
Email: ahartry@themoralesfirm.com

PLAINTIFF'S COMPLAINT